UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROYCE GOODSON, | § | |
| | § | |
|   *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:13-cv-2671 |
| | § | |
| CITY OF MONTGOMERY, | § | |
| WILLIAM J. KOTLAN, and | § | |
| JOHN FOX, | § | |
| | § | |
|   *Defendants*. | § | |

## MEMORANDUM AND ORDER

Before the Court in this wrongful termination suit is Defendants City of Montgomery, Texas ("the City"), William J. Kotlan, and John Fox's Rule 12(b)(6) Motion to Dismiss. ("Motion"; Doc. No. 3.) Defendants seek dismissal of Plaintiff Royce Goodson's complaint, claiming that he has failed to state a claim under the Due Process Clause and that the doctrine of qualified immunity protects both Mr. Kotlan and Mr. Fox from suit. Upon consideration of the parties' briefing and the applicable law, the Court agrees that Mr. Goodson has failed to state a claim under the Due Process Clause. Defendants' Motion to Dismiss is **GRANTED**.

I.     BACKGROUND[1]

At some point before May 2013, Mr. Goodson was hired as Chief of Police of the City of Montgomery, Texas in order to "clean up" the City's Police Department, which, he alleges, was marred by "years of corruption, dirty politics, self-dealing, and in-fighting." Pet. ¶ 7. After he "successfully cleaned up" the Department, he contends that he was fired for refusing to

---

[1] Unless otherwise noted, all facts are drawn from the allegations in Mr. Goodson's Original Petition, Jury Demand, and Request for Disclosure ("Petition"; Doc. No. 1-1). As it must, the Court accepts Mr. Goodson's factual allegations as true for these purposes.

1

undertake what he characterizes as criminal acts insisted upon by City Administrator William J. Kotlan and Mayor John Fox. *Id.* ¶ 8.

According to Mr. Goodson, Mr. Kotlan and Mr. Fox urged that he discipline one City police officer "because she had performed her law enforcement function zealously" and another "because he had prepared a law enforcement report in the manner which his job duties required." *Id.* Mr. Goodson claims that, if he had disciplined either of those officers as Mr. Kotlan and Mr. Fox desired, he "would have prevented or delayed the service of those Police Officers as public servants," in violation, he argues, of Sections 36.06(a)(1) and (2) of the Texas Penal Code. A violation of either of those subsections is a third-degree felony in the state of Texas. Tex. Penal Code §§ 36.06(c).

According to Mr. Goodson, after his refusal to commit these acts, and even though both Mr. Kotlan and Mr. Fox "made clear to him that [his] job performance was excellent," those Defendants met with him, and asked him to resign on May 21, 2013. *Id.* ¶ 9. Mr. Goodson refused to resign. Mr. Kotlan and Mr. Fox then suspended Mr. Goodson's employment until further action could be taken at a City Council meeting on May 28, 2013. Following only "very brief" discussion at the open portion of the May 28, 2013 City Council meeting, the City Council terminated his employment. *Id.* ¶ 10. After that employment action, Mr. Goodson contends that Mr. Kotlan and Mr. Fox "proceeded to engage in the criminal acts" which he had refused to commit. *Id.* ¶ 11. Mr. Goodson contends that he appealed the decision in accordance with the City's personnel policies, but "[t]he City refused to follow its own procedures in considering the appeal and baldly refused even to consider the appeal." *Id.*

Mr. Goodson alleges that, in connection with the May 28, 2013 City Council meeting, the Defendants violated the Texas Open Meetings Act, Tex. Gov't Code §§ 551.001-551.146, in at

least three ways. First, Mr. Kotlan and Mr. Fox "lobbied to terminate and replace [him] well before that meeting." *Id.* ¶ 10. Mr. Goodson claims that, long before the May 28, 2013 meeting, "one of the senior Police Officers of the City" told him that Defendants Kotlan and Fox had said that "Joe Napolitano would replace [him] as Chief of Police." *Id.* Mr. Goodson relates that Mr. Napolitano was indeed appointed Chief of Police at the City Council meeting following the May 28, 2013 meeting at which Mr. Goodson's employment was terminated. Second, Mr. Kotlan and Mr. Fox had a list of complaints about Mr. Goodson, but they "were unable to substantiate any of those complaints factually and had clearly discussed those matters with members of the City Council" before the May 28, 2013 meeting. *Id.* Third, Mr. Goodson alleges that he "demanded" both in writing and orally that the City Council take any action regarding his employment status in an open meeting, pursuant to Section 551.074(b) of the Texas Government Code. *Id.* Nevertheless, the City Council held a closed meeting, without Mr. Goodson present, to discuss his employment, and also "obstructed" his "attempt to discuss his employment status before the open City Council meeting." *Id.*

Mr. Goodson filed this action in July, 2013 in the 284th Judicial District of Montgomery, County, Texas, and the Defendants removed it to this Court in September, 2013. Defendants' Notice of Removal to Federal Court (Doc. No. 1). Mr. Goodson brings suit under 42 U.S.C. § 1983 for violations of his substantive and procedural due process rights as guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution. As a result of the events described above, Mr. Goodson seeks to recover lost past and future wages as well as for damage to his reputation. Pet. ¶ 17. He also seeks exemplary damages because of Defendants' alleged "reckless and callous indifference" or their "evil intent" and "malice," as well as attorney's fees under 42 U.S.C. § 1988. Pet. ¶¶ 18-19. The pending motion followed.

## II.     LEGAL STANDARD

A court may dismiss a complaint for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,'" though it does require more than simply a "sheer possibility" that a defendant has acted unlawfully. *Id.* Thus, a pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 678-79 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). A court may

consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that the plaintiff has adequately pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

Nevertheless, a court may not assume that a plaintiff can prove facts that were not alleged. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir. 1986). Indeed, dismissal is appropriate where the complaint "lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citation omitted). Even so, "[m]otions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).

Finally, the Federal Rules of Civil Procedure provide that a court "should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[G]ranting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (citation omitted). A court should generally "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Id.* Courts must have a "substantial reason" to deny leave to amend, but leave to amend is not automatic. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (citation omitted). In deciding whether to grant leave to amend, courts may

consider many factors, "including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Id.* (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

### III. ANALYSIS

Defendants seek to dismiss Mr. Goodson's claims under Federal Rule of Civil Procedure 12(b)(6), contending that Mr. Goodson failed to plead sufficiently a violation of either his procedural or substantive due process rights. In addition, Defendants Kotlan and Fox argue that the claims against them should be dismissed pursuant to the qualified immunity doctrine. Mr. Goodson responds, first, that Defendants seek to have the Court consider materials attached neither to his Petition or to their motion, which he avers is improper when adjudicating a motion under Rule 12(b)(6). Further, he argues that he has pleaded facts more than adequate to support his due process claims, and disputes Defendants' argument that the doctrine of qualified immunity requires dismissal of his claims against Defendants Kotlan and Fox.

Section 1983 provides a cause of action when persons have been deprived of federal rights under color of state law. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. In order to state a claim under § 1983, a plaintiff must (1) allege a violation of rights guaranteed by the U.S. Constitution or federal law, and (2) show that the alleged

deprivation was committed by a person acting under color of state law. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d at 215.

### A. Facts Outside of the Complaint

Before turning to the merits of Defendants motion, the Court must resolve the question of what facts it may consider in adjudicating the motion. Mr. Goodson argues that several of the facts alleged by Defendants in their motion are not only unsupported by affidavits or other evidence, but they appear nowhere other than in the body of the motion. As alleged by Mr. Goodson, those facts include:

- Goodson was an at-will employee;
- Goodson and his attorney were provided notice and an opportunity to respond to Montgomery City Council;
- Goodson had an opportunity to respond to Montgomery City Council prior to a City Council vote on Goodson's employment;
- Defendant City of Montgomery has no provision for the appeal of the termination;
- Defendant City of Montgomery has a "just cause" provision applicable to Goodson;
- Defendant City of Montgomery's actions were not arbitrary or capricious;
- Defendants could reasonably believe that the denial of Goodson's due process was lawful.

Pl. Royce Goodson's Objection and Response to Defendants' Rule 12(b)(6) Motion to Dismiss at ¶ 4 ("Plaintiff's Response"; Doc. No. 7).

Rule 12(b)(6) provides a mechanism for challenging the sufficiency of the pleadings. Summary judgment under Rule 56 is the proper vehicle by which to attack the merits of an opposing party's allegations. Here, Mr. Goodson is correct that the City has attempted to argue for dismissal improperly, by raising a number of arguments keyed to factual assertions made without support – factual assertions more properly adjudicated at summary judgment. The Court will consider only what is legitimately before it: Mr. Goodson's pleadings. It refuses to consider the City's unsupported factual statements.

### B. Due Process Violation

In order to prove that his due process rights were violated, Mr. Goodson must show that he has "asserted a recognized liberty or property interest within purview of Fourteenth Amendment and that [he] was intentionally or recklessly deprived of that interest, even temporarily, under color of state law." *Woodard v. Andrus,* 419 F.3d 348, 353 (5th Cir. 2005) (quoting *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 450 (5th Cir. 1994)). Thus, in order to succeed on either a substantive or a procedural due process claim challenging the termination of his employment, Mr. Goodson must first demonstrate that he had a property interest in his employment. *Porter v. Valdez*, 424 F. App'x 382, 388-89 (5th Cir. 2011).

It is a staple of federal law that the Constitution does not create such property interests, and so Mr. Goodson must "therefore look to Texas law for the creation of a property interest that will support [his] claim to due process rights." *Garcia v. Reeves Cnty.*, 32 F.3d 200, 203 (5th Cir. 1994) (internal citation omitted). A bedrock principle of Texas employment law is that all employees are presumed to be hired "at-will." *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 734 (Tex. 1985) (citing *East Line & R.R.R. Co. v. Scott*, 10 S.W. 99, 102 (Tex. 1888)). Consequently, under Texas law, absent any other contractual or legal arrangement, an employer may "discharge an employee for a good reason, a bad reason, or no reason at all." *Figueroa v. West*, 902 S.W.2d 701, 704 (Tex. App.—El Paso 1995, no writ) (citing *Vida v. El Paso Emps.' Fed. Credit Union*, 885 S.W.2d 177, 180-81 (Tex. App.—El Paso 1994, no writ)). Therefore, in cases where the employer is a public entity, such as this one, a constitutionally cognizable property interest "is created where the public entity has acted to confer, or alternatively, has created conditions which infer, the existence of a property interest by abrogating its right to terminate an employee without cause." *Muncy v. City of Dallas, Tex.*, 335 F.3d 394, 398 (5th Cir.

2003). A public entity may so create a property interest in public employment through contract, statute, local ordinance, other rules or policies, or a mutual understanding with an employee. *See Bolton v. City of Dallas, Tex.*, 472 F.3d 261, 263-64 (5th Cir. 2006); *Muncy*, 335 F.3d at 398.

Mr. Goodson claims two grounds for a property interest sufficient both to defeat the at-will employment presumption and state a claim under the Due Process Clause. In particular, he invokes the Texas Supreme Court's exception to the at-will employment doctrine in *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985), and the principle that a governmental employer cannot deny an employee the due process promised by the employer's own procedures.

### 1. *Sabine Pilot*'s Exception to the At-Will Employment Doctrine

Over the years, Texas has developed narrow exceptions to the at-will employment doctrine. One such exception was announced by the Texas Supreme Court in *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985). In *Sabine Pilot*, the Court created a private right of action for wrongful discharge if the employee was discharged solely for refusing to engage in illegal conduct. 687 S.W.2d at 735. Mr. Goodson argues that this *Sabine Pilot* exception has created for him a property interest in his employment sufficient to state a claim under the Due Process Clause.

The Court could find no case law speaking directly to Mr. Goodson's contention. Nevertheless, Texas precedent persuades the Court that, in creating a narrow exception to Texas's at-will employment framework in *Sabine Pilot*, the Texas Supreme Court did *not* also create the kind of entitlement to employment that would result in a constitutionally cognizable property interest. In *Safeshred, Inc. v. Martinez*, the Texas Supreme Court had occasion to "clarify the nature and scope" of the cause of action it created in *Sabine Pilot*. 365 S.W.3d 655, 657 (Tex. 2012), *as corrected* (June 8, 2012). There, the Texas Supreme Court was called upon

9

to determine whether a plaintiff bringing a *Sabine Pilot* claim could recover punitive damages. Because punitive damages are generally available for tort actions but not for breach of contract actions, the Court had to decide whether that cause of action sounds in tort or in contract. It determined that a *Sabine Pilot* claim is a tort claim.

Petitioner Safeshred, Inc. argued that the employment relationship is a contractual one, and that the *Sabine Pilot* exception "essentially supplements that relationship with an implied contractual provision preventing discharge for refusal to perform an illegal act." *Id.* at 659. The Texas Supreme Court disagreed. It first affirmed its commitment to Texas's long tradition of at-will employment, and its own history of narrowly construing the *Sabine Pilot* exception. "[T]o say that *Sabine Pilot* created an implied contractual provision would presume, in the first place, that there is a contract between at-will employees and their employers in which to place an implied provision. We have never recognized such a proposition." *Id.* at 660. "On the contrary," the Court explained, "we have long held firm to the principle that, in Texas, an at-will employee may be fired for a good reason, a bad reason, or no reason at all. And where the promise of continued employment is illusory, it cannot form the basis of an enforceable contract." *Id.* (internal citations omitted). Rather, the Court concluded that *Sabine Pilot* claims "sound in tort, providing a remedy when an employee refuses to comply with an employer's directive to violate the law and is subsequently fired for that refusal." *Id.* This remedy "stems not from an agreement between employer and employee (the subject of a contract), but from legislatively expressed public policies embedded in the criminal law." *Id.* The Texas Supreme Court refused to find in *Sabine Pilot* justification sufficient to alter the at-will employment relationship.

The Texas Supreme Court's reasoning in *Safeshred* casts serious doubt on Mr. Goodson's assertion that *Sabine Pilot* creates a property interest in employment where otherwise none

exists. Indeed, Mr. Goodson makes an argument nearly identical to that advanced by Safeshred – and roundly rejected by the Texas Supreme Court. Like Safeshred, Mr. Goodson would have this Court hold that *Sabine Pilot* effectively inserted a contractual provision preventing his discharge for refusal to perform an illegal act, and that, in doing so, it also created for him a property interest falling within the purview of the Due Process Clause. On matters of Texas state law, this Court will not venture where the Texas Supreme Court has refused to go. The Court cannot hold, as Mr. Goodson urges, that *Sabine Pilot* created a property interest in employment sufficient to state a claim under the Due Process Clause.

## 2. **Grievance and Appeal Procedures**

Mr. Goodson also argues that "a governmental employer must accord an employee the due process which he is due under the governmental entity's grievance and appeal procedures." Pl.'s Resp. ¶ 9. In support of this contention, he cites *County of Dallas v. Walton*, 216 S.W.3d 367, 370 (Tex. 2007), and draws the Court's attention particularly to the concurring opinion of Justice Brister. The case is unavailing, however.

Mr. Goodson is correct that, in *Walton*, the Texas Supreme Court, including Justice Brister, held that the deputy constable's procedural due process claims survived summary judgment even though he had signed an agreement acknowledging that he was an at-will employee. However, the court reached that decision only because it had already determined that, at the relevant time, County of Dallas deputy constables were civil service employees whose employment was subject to termination "for cause," and who therefore had a protected property interest in their continued employment. *See Cnty. of Dallas v. Wiland*, 216 S.W.3d 344, 349-54 (Tex. 2007). The *Walton* court reasoned that, regardless of the terms of the agreement signed by Mr. Walton, who was a County of Dallas deputy constable, "the civil service statute does not

11

contemplate that individual constables can unilaterally remove otherwise covered deputies from the civil service system." *Walton*, 216 S.W.3d at 369. Therefore, the court concluded, that agreement was "of no effect." *Id.* Because the agreement did nothing to alter Mr. Walton's status as a civil service employee with a property interest in his continued employment, his procedural due process claims survived summary judgment. The same is not true here, however. Mr. Goodson has not pleaded that he was a civil service employee, or that his employment was otherwise subject to termination for cause only. Thus, he is not in the same position as Mr. Walton, and the Texas Supreme Court's *Walton* case is inapposite.

Mr. Goodson argues that he has pleaded that "there were limitations upon Defendants' right to terminate Goodson as polic[e] chief without cause, because Defendant City of Montgomery had created conditions upon such terminations in the form of the City's policies and procedures for such employment actions." Pl.'s Resp. ¶ 11. Mr. Goodson cites to paragraphs ten and eleven of his Petition, but those do not contain any discussion of the kinds of provisions Mr. Goodson describes in his Response, nor could the Court find any elsewhere in his Petition. Rather, paragraphs ten and eleven assert that Mr. Goodson's employment was terminated in a Montgomery City Council meeting that violated the Texas Open Meetings Act, and that the City failed to follow its own appeal procedures.

The Texas Open Meetings Act, however, does not place the kind of "limitations upon Defendants' right to terminate Goodson as polic[e] chief without cause" that would serve to grant Mr. Goodson a property interest sufficient to state a claim under the Due Process Clause. *See City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex. 1991) ("The Open Meetings Act is not a legislative scheme for service of process; it has no due process implications. Rather, its purpose is to provide openness at every stage of [a governmental

body's] deliberations. . . . The intended beneficiaries of the Act are not individual citizens . . . but members of the interested public.") (internal quotation marks and citations omitted). Mr. Goodson's reliance on the Texas Open Meetings Act to create a constitutionally cognizable property interest is misplaced.

In addition, while Mr. Goodson's allegation that the City failed to follow its own appeal procedures could, in some circumstances, serve to support a property interest, it does not *necessarily* do so, and Mr. Goodson has not pleaded facts that would support a property interest. In *Cobb v. City of Harahan*, 516 F. App'x 337 (5th Cir. 2013), the Fifth Circuit faced a suit brought by a former municipal employee in part because the proper employment termination procedures were not followed. There, the Fifth Circuit stated:

> Even assuming the Lawrason Act restricted Mosca's authority to fire Cobb without approval of the city council, it provided Cobb with no property interest in his continued employment. The Lawrason Act says nothing about *why* his employment may be terminated; it only specifies *how* his employment may be terminated. An ordinance "merely conditioning an employee's removal on compliance with certain specified procedures" does not endow that employee with a property interest in his employment.

516 F. App'x at 340 (quoting *Bishop v. Wood*, 426 U.S. 341, 345 (1976)). Here, Mr. Goodson has only pleaded that the City did not follow its own appeal procedures; he has not pleaded facts showing that those appeal procedures limited the City's ability to terminate his employment without cause. Further, this reasoning also supports the conclusion that the Texas Open Meetings Act does not create a property interest in continued public employment. Its provisions may similarly serve to require certain procedures prior to termination, but they do not limit a public entity's ability to discharge without cause. Consequently, the Court is persuaded that dismissal is appropriate.

## IV. CONCLUSION

Mr. Goodson does not point to any contractual provision, state statute, municipal ordinance or other rule or policy as having created a constitutionally cognizable property interest in his employment. Consequently, the Court concludes that Mr. Goodson has failed, on these pleadings, to state a claim under the Due Process Clause. Because Mr. Goodson has failed to do so, the Court need not, and does not, consider Defendants' other arguments for dismissal. The Court therefore **GRANTS** Defendants' Motion to Dismiss. Mr. Goodson may replead within the bounds of the law and according to this Order, by August 1, 2014.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the third day of July, 2014.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE